# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>DAVID McCLOSKEY | Criminal No. 09-225<br>Civil No. 16-987 |

## MEMORANDUM OPINION

Conti, Chief District Judge.

### I. Introduction

Defendant David McCloskey ("McCloskey") filed a motion, through counsel, to vacate his conviction and/or sentence pursuant to 28 U.S.C. § 2255 (ECF No. 149), with numerous exhibits and brief in support (ECF Nos. 150, 151). On June 15, 2017, the court issued an opinion which denied McCloskey's motion, with one exception. The court held an evidentiary hearing on August 3 and 9, 2017, to determine whether McCloskey's former attorney, Michael DeRiso ("DeRiso"), provided ineffective assistance regarding a motion to withdraw his guilty plea. The parties filed proposed findings of fact and conclusions of law (ECF Nos. 165, 166) and the matter is now ripe for disposition.

### II. Procedural Background

The entire factual and procedural history will not be recounted. In summary, on July 14, 2009, a federal grand jury returned a one-count indictment charging McCloskey with Conspiracy to Commit Wire Fraud, a violation of 18 U.S.C. § 1349. (ECF No. 1.) On June 8, 2010, defendant pleaded guilty to the offense. (ECF Nos. 28.) The parties vigorously disputed sentencing issues. On May 22, 2012, while awaiting sentencing, DeRiso filed a motion to

withdraw McCloskey's guilty plea, with an attached affidavit signed by McCloskey and witnessed by DeRiso. (ECF No. 83). On September 4, 2012, DeRiso was replaced as McCloskey's attorney. On January 2, 2013, McCloskey withdrew the motion to withdraw his guilty plea.

On November 26, 2013, the court determined that filing the motion to withdraw his guilty plea and the affidavit constituted obstruction of justice and prevented McCloskey from qualifying for a sentence reduction for acceptance of responsibility. Filing the motion to withdraw his guilty plea changed McCloskey's advisory guideline range from 135-168 months to 210-240 months. On February 18, 2014, the court granted a downward variance and sentenced McCloskey to a term of imprisonment of 120 months. As noted above, McCloskey filed a § 2255 motion alleging that DeRiso provided ineffective assistance of counsel.

### III. Findings of Fact

There was no plea agreement in this case. During the plea hearing, McCloskey agreed with only part of the government's factual basis for the conspiracy charge. McCloskey admitted that he knew Kenneth Cowden ("Cowden") was not a licensed appraiser, but did not concede that he hired Cowden to perform inflated appraisals. McCloskey acknowledged that the factual statements he agreed with "satisf[y] the elements of wire fraud." (Plea Hr'g Tr. at 17–20, ECF No. 78.) The court questioned McCloskey thoroughly to confirm that McCloskey knew that he could be sentenced to the statutory maximum of 20 years in prison and would be bound by his guilty plea even if his counsel made a mistake in advising him regarding the advisory guidelines. The court accepted defendant's entry of a guilty plea as knowing and voluntary. (*Id.* at 20–21.)

The sentencing process was extensive and extended for over three years. The parties vigorously disputed numerous sentencing issues, most notably the relevant conduct and amount of loss the government sought to attribute to McCloskey.[1] The court held an evidentiary hearing on March 19 and 20, 2012, to determine the correct application of the sentencing guidelines in this case. After the hearing, McCloskey's relationship with DeRiso soured. In the following weeks, they exchanged a series of emails in which McCloskey criticized DeRiso's handling of the hearing.

DeRiso had the initial idea to move to withdraw the guilty plea. In an email dated April 14, 2012, DeRiso stated: "Before you wrote this email to me, I had been doing research on the withdrawal of your plea. I was about to contact you to discuss your options and what the evidence means. I also contacted former AUSA James Love to get a 2nd opinion and I was going to have us meet." (Defendant's Exh. 6.) Prior to that time, McCloskey was not aware that withdrawal of his guilty plea was possible. (ECF 160 at 16-17.) McCloskey believed that the withdrawal of his guilty plea would be based on alleged prosecutorial misconduct in relying on known false witnesses to tie him to the amount of loss of other brokers. (ECF No. 160 at 21.)

DeRiso was unfamiliar with motions to withdraw guilty pleas in federal court and therefore hired Love to help him draft it. (ECF No. 161 at 92-93). Love had no prior involvement in the case. *Id*. at 106. Although the guilty plea was entered almost two years earlier, DeRiso twice told McCloskey that the withdrawal of his guilty plea was time sensitive. (Defendant's Exhs. 7, 9.)

---

[1] McCloskey contended his responsibility should be limited to thirteen or fourteen loans within the post-2004 indictment period leading to an amount of loss of $33,000. The government sought to hold McCloskey responsible for the actions of more than a dozen mortgage brokers, with an amount of loss in excess of $7,000,000. (*See* ECF Nos. 41, 119.) The court determined that the loss amount was $2,049,015.07. (ECF No. 119).

On May 2, 2012, McCloskey met with DeRiso and Love to discuss withdrawal of his guilty plea. DeRiso was not present for the entire meeting. (ECF 160 at 25.) DeRiso testified that he did not have a clear recollection of what was said at the meeting. (ECF No. 161 at 97-98.) McCloskey testified that Love advised him that the motion was a "slam dunk" and "no brainer." (ECF No. 160 at 27). McCloskey testified that neither DeRiso nor Love discussed any potential downsides to filing the motion. *Id*. DeRiso admitted that he did not advise McCloskey about the obstruction of justice enhancement until after the government asserted it. (ECF No. 161 at 20, 110.)[2] There is no evidence in the record that DeRiso advised McCloskey that by signing and filing the affidavit he was subject to possible perjury charges or that filing the motion was contrary to DeRiso's legal advice. (ECF No. 161 at 111.)

Love drafted the original motion and affidavit and sent them to DeRiso. (ECF No. 161 at 20, 100.) McCloskey reviewed the motion and made several stylistic revisions. (Defendant's Exh. 14.) McCloskey also wanted to include his reasons for pleading guilty in the motion. *Id*. DeRiso disagreed with adding these reasons and refused to do so. *Id*.; (ECF No. 160 at 32.) McCloskey asked to talk to Love, but DeRiso did not make him available. (ECF No. 160 at 32-33; ECF No. 161 at 106.)

Love drafted the affidavit without communications from DeRiso. (ECF 161 at 100-101.) In the affidavit, McCloskey made the following sworn representations to the court: "I have read the entirely [sic] of this motion and assert that each factual matter stated therein is true and correct to the best of my knowledge, information and belief," and "I assert that I am innocent of the offense charged in the Indictment." (ECF No. 83-1 ¶¶ 2, 5.) McCloskey acknowledged that

---

[2] DeRiso testified that he did not advise McCloskey it was a "slam dunk" and did advise him about the loss of points for acceptance of responsibility. (ECF No. 161 at 19.)

4

his affidavit was made subject to the criminal penalties for perjury. *Id.* McCloskey signed the affidavit without making any changes to it. (ECF No. 160 at 35.)

When McCloskey went to DeRiso's office to sign the affidavit, DeRiso was not there. DeRiso's assistant, Renee, witnessed McCloskey's signature on the affidavit. (ECF No. 160 at 36-37.) The affidavit is dated May 21, 2012. There is a signature line for a witness, which contains DeRiso's signature above his typed name. (ECF No. 83-1.) On May 22, 2012, DeRiso filed the motion to withdraw the guilty plea and attached the affidavit. (ECF No. 83.) The motion was signed by DeRiso.

On June 5, 2012, the government opposed the motion to withdraw the guilty plea, and noted that it "now objects to any reduction based on acceptance of responsibility and intends to assert that the two-level obstruction of justice enhancement applies." (ECF No. 84 at 10 n.7.) DeRiso admitted that he was surprised by the government's argument regarding obstruction of justice and that he had not advised McCloskey about that possibility. (ECF No. 161 at 110.) The hearing on the motion to withdraw the guilty plea was postponed several times.

In August 2012, DeRiso filed a motion to withdraw as counsel and McCloskey filed a parallel motion to remove DeRiso as his attorney. (ECF Nos. 95, 96.) On September 4, 2012, the court held a hearing on the motions to remove DeRiso as counsel. (Transcript, ECF No. 144.) DeRiso informed the court that the impasse with McCloskey arose over how to handle the motion to withdraw his guilty plea. (*Id.* at 5.) Upon questioning from the court, DeRiso explained that the dispute was not over whether the motion should have been filed; he was competent to handle it and had no problem doing so; and the allegation was "in good faith and founded." *Id*. The dispute instead involved strategy – who should be called as witnesses, what evidence should be produced, and how the hearing should proceed. *Id*. at 5-6. DeRiso never

5

told the court that he filed the motion to withdraw the guilty plea at McCloskey's direction even though it was contrary to his legal advice.[3]

Because McCloskey's accusations of ineffective assistance of counsel created a conflict of interest, the court granted the motions and terminated DeRiso's representation. On September 14, 2012, James Robinson ("Robinson") was appointed as McCloskey's attorney. On January 2, 2013, the court held a hearing on the motion to withdraw the guilty plea. When Robinson called DeRiso to testify as a witness, the government sought to clarify the record regarding McCloskey's waiver of the attorney-client privilege and the government's intent to pursue perjury charges. (ECF No. 150-8 at 7-16.) Robinson requested time to discuss these potential consequences with McCloskey, stating: "This is totally new to me." *Id*. at 16. After conferring with Robinson, McCloskey abandoned the motion to withdraw his guilty plea. *Id.* at 17.

On June 6, 2013, attorney Martin Dietz ("Dietz") was appointed as McCloskey's counsel and Robinson withdrew his appearance. On November 26, 2013, the court found that the statements McCloskey made in the affidavit in support of his motion to withdraw his guilty plea directly contradicted his knowing and voluntary admission in open court, under oath, that he committed the offense charged in the indictment. (ECF No. 119 ¶ 18.) Based on the filing of the motion to withdraw guilty plea and the attached affidavit, the court imposed a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1 and denied the two-level

---

[3] In the hearing on August 9, 2017, DeRiso testified that he had discussed the negative repercussions of filing the motion with McCloskey in advance; he told McCloskey not to file the motion; and it was a mistake. (ECF No. 161 at 98, 110.) This testimony is difficult to reconcile with DeRiso's testimony on September 4, 2012 and his emails to McCloskey. DeRiso admitted that he has no documentation that he discussed the downsides of filing the motion with McCloskey or advised him that it was against his legal advice. *Id*. at 98-99. DeRiso did not place any concerns on the record during the September 4, 2012 hearing. *Id*. at 111. The court concludes that DeRiso's 2012 testimony, more proximate in time to the actual events, supports McCloskey's testimony that McCloskey was not told about the risk of the obstruction of justice enhancement.

decrease for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) in determining the advisory guideline range.[4] (ECF No. 119 at ¶¶ 70-83.) The guidelines considered by the court in imposing the sentence for McCloskey were based on offense level 37 and criminal history category I, for an advisory range of 210-240 months (capped at the statutory maximum of 240 months). Without the adjustments resulting from the motion to withdraw the plea and affidavit, McCloskey's offense level would have been 33 and criminal history category I, for an advisory guideline range of 135-168 months. On February 18, 2014, the court granted a downward variance and sentenced McCloskey to a term of imprisonment of 120 months.

## IV. Legal Analysis

### A. Standard of Review

Under 28 U.S.C. § 2255, a federal prisoner in custody may move the court which imposed the sentence to vacate, set aside, or correct the sentence upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. The Supreme Court reads § 2255 as stating four grounds upon which relief can be granted:

> (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence "is otherwise subject to collateral attack."

CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 625 (4th ed. 2011) (quoting *Hill v. United States*, 368 U.S. 424, 426-27 (1962)). The statute provides as a remedy for a

---

[4] Defendant conceded that the additional one-level decrease in U.S.S.G. § 3E1.1(b) did not apply.

sentence imposed in violation of law that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255.

"As a collateral challenge, a motion pursuant to [§ 2255] is reviewed much less favorably than a direct appeal of the sentence." *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)). "Indeed, relief under § 2255 is available only when 'the claimed error of law was a fundamental defect [that] inherently results in a complete miscarriage of justice, and... present[s] exceptional circumstances where the need for the remedy afforded by the writ...is apparent.'" *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974) (internal quotation marks omitted)).

### B. Ineffective Assistance of Counsel

To support a claim that counsel's assistance was so defective as to amount to a deprivation of one's Sixth Amendment right to effective assistance of counsel and require reversal of a conviction, a defendant must show two things: (1) counsel's performance was deficient; and (2) counsel's deficient performance caused him prejudice. *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *see Ross v. Dist. Att'y of the Cnty. of Allegheny*, 672 F.3d 198, 210 (3d Cir. 2012).

"To show deficient performance, 'a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness. . . The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Ross*, 672 F.3d at 210 (quoting *Harrington v. Richter*, 562 U.S. 86, 104 (2011)). When evaluating whether counsel's

8

performance was deficient, the relevant inquiry is whether counsel's assistance was reasonable under the totality of the circumstances. *Strickland*, 466 U.S. at 688.

"The Supreme Court directs that our 'scrutiny of counsel's performance must be highly deferential' to avoid holding counsel incompetent because of reasonable strategic or tactical judgments which, with the benefit of tactical hindsight, might prove not to have best served his client's interests." *United States v. Loughery*, 908 F.2d 1014, 1018 (D.C. Cir. 1990) (quoting *Strickland*, 466 U.S. at 689). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected . . . if they are based on professional judgment." *Id.* at 681. "*Strickland* and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different . . . strategy would have fared better." *Roland v. Vaughn*, 445 F.3d 671, 681-82 (3d Cir. 2006).

In the context of criminal defense, "certain litigation decisions are considered 'fundamental' and are for the client to make. These include decisions on whether to plead guilty, whether to testify, and whether to take an appeal. After consultation with the client, all other decisions fall within the professional responsibility of counsel." *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).

C. <u>Prejudice Prong</u>

"With respect to prejudice, a challenger must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Harrington*, 562 U.S. at 104. It is not enough to show that counsel's errors had "some conceivable effect on the outcome of the proceeding." *Id.* (citing *Strickland*, 466 U.S. at 693).

The allegations of ineffective assistance of counsel relate to the filing of the motion to withdraw the guilty plea and the affidavit. The government argues that McCloskey failed to demonstrate prejudice because he would have persisted in the motion even if DeRiso had properly advised him about the possible adverse consequences. This argument is contradicted by the record. Here, DeRiso did <u>not</u> advise McCloskey about the possible obstruction of justice enhancement or the risk of perjury charges. After Robinson was appointed as counsel and the potential for a perjury charge and the obstruction of justice enhancement was raised, McCloskey withdrew the motion. (See Transcript of January 2, 2013 Hearing, ECF No. 150-8 at 15-17) (government clarifies that McCloskey could face obstruction of justice and perjury charges; Robinson requests a minute to consult with his client, stating "This is totally new to me"; and the motion is withdrawn).

The only case law authority cited by the government, *Dodson v. United States*, No. 12-97, 2013 WL 4401385 (N.D.W.V. Aug. 15, 2013), is easily distinguishable. In *Dodson*, the defendant wanted to withdraw his guilty plea. His counsel did not pursue it because there was no legitimate basis for the motion. It was not ineffective, therefore, for counsel to fail to inform his client about the risks of withdrawing the plea. *Id.* at *6. In addition, the court warned Dodson that he would be exposed to a perjury charge. *Id.*

The record in this case, by contrast, reflects that DeRiso advised McCloskey about withdrawing the guilty plea, caused the motion and affidavit to be drafted, and filed them on his client's behalf. DeRiso continued to believe at least through September 2012 that the motion was "in good faith and founded." (ECF No. 144). DeRiso twice advised McCloskey to quickly file the motion. (Defendant's Exh. 7, 9). In addition, DeRiso refused McCloskey's request to speak to

Love about the motion and rejected McCloskey's suggestion to include an explanation about why he pled guilty. (Defendant's Exh. 14). In sum, McCloskey had questions about the motion and was not advised that signing the affidavit implicated him in perjury and created the potential for an obstruction of justice enhancement. But for DeRiso's actions, there is a reasonable probability that McCloskey would not have wanted the motion and affidavit to be filed at all, or alternatively, would have modified them in a way that would have avoided the potential for an obstruction of justice enhancement and a possible perjury charge. At a minimum, the record reflects that McCloskey would not have pursued the motion and affidavit in the form they were actually filed if he had been properly advised about all the potential adverse consequences. There is a reasonable probability that but for counsel's unprofessional errors, the motion and affidavit would not have been filed and there would not have been an obstruction of justice enhancement.

McCloskey adequately demonstrated prejudice because his advisory guideline range nearly doubled as a direct result of the motion and affidavit (from 135-168 months to 210-240 months), although the court granted a substantial downward variance to an even lower sentence of 120 months. There is a reasonable probability that if McCloskey's starting range had been 135-168 months, his ultimate sentence would have been less than 120 months. "[W]hen the starting point for the § 3553(a) analysis is incorrect, the end point, i.e., the resulting sentence can rarely be shown to be unaffected." *United States v. Langford*, 516 F.3d 205, 217 (3d Cir. 2008). Any increase in actual jail time has Sixth Amendment significance. *See United States v. Cobb*, No. 09-733, 110 F. Supp.3d 591, 599-601 (D.N.J. 2015) (granting § 2255 motion because it was reasonably probable that defendant's sentence would have been lower if based on a different advisory guideline range, even though the court granted a downward variance in imposing the original sentence). At sentencing, the court recognized that five points were added to his offense level under the

guidelines because of the filing of the motion and affidavit and explained: "So I had to take that into consideration here, and I could not go below the 120 months, which is a long sentence, because of your own conduct and the issues that the government faced and the court faced from that." (ECF No. 143 at 43). In sum, the prejudice prong is satisfied.

### D. Performance Prong

The court must, therefore, address the performance prong. The motion to withdraw the guilty plea was a volitional action taken by McCloskey upon the advice of his counsel. DeRiso informed McCloskey that the motion was time sensitive, but it was not a required phase of the case, or compelled by the prosecution or the court. DeRiso was deeply involved in the decision. DeRiso had the original idea, signed as a witness on the affidavit and filed the motion under his own signature.

DeRiso was unfamiliar with motions to withdraw guilty pleas in federal court and therefore engaged Love, who had no prior involvement in the case, to prepare it. (ECF No. 161 at 92-93.) Love drafted the original motion, to which McCloskey made stylistic revisions; Love drafted the supporting affidavit, which McCloskey signed without making any changes. McCloskey attempted to discuss the motion and affidavit with Love prior to filing, but DeRiso refused. McCloskey wanted to add the reasons he pled guilty, but DeRiso refused. The court finds that neither DeRiso nor Love advised McCloskey about the potential for a perjury charge or an enhancement for obstruction of justice. DeRiso admittedly did not advise McCloskey about the obstruction of justice enhancement until the government asserted it after the motion and affidavit were filed. (ECF No. 161 at 20, 110). There is no evidence in the record that filing the motion

was against DeRiso's legal advice. (ECF No. 161 at 111.) DeRiso continued to believe that it was a proper motion, as he testified on September 4, 2012.

DeRiso advised McCloskey to file the motion to withdraw his guilty plea and to execute an affidavit proclaiming his innocence without warning him about significant adverse consequences that nearly doubled his advisory guideline range. This conduct falls below a reasonable standard of performance. *See, e.g., Padilla v. Kentucky*, 559 U.S. 356, 368-69 (2010) (counsel's failure to advise defendant of adverse immigration consequences violated the performance prong); Pennsylvania Rule of Professional Conduct 3.3(a)(3) (a lawyer shall not knowingly "offer evidence that the lawyer knows to be false.").

In summary, the court finds that McCloskey received ineffective assistance of counsel with respect to filing a motion to withdraw his guilty plea and the false affidavit that accompanied it. His counsel never advised him about the adverse consequences of a possible perjury charge or enhancement for obstruction of justice. DeRiso continued to believe that it was a proper motion months later. McCloskey suffered clear and significant prejudice because he lost three points for acceptance of responsibility and received a two-level enhancement for obstruction of justice as a direct result of filing the motion and affidavit.

## V. Resentencing

The appropriate remedy in this case is resentencing. The ineffective assistance of counsel found by this court does not implicate the knowing and voluntary plea of guilty entered in this case. On resentencing, the court will not impose an enhancement for obstruction of justice. The parties shall file briefs on or before January 19, 2018, regarding the applicable guideline calculation, including whether McCloskey should receive credit for acceptance of responsibility

pursuant to U.S.S.G. § 3E1.1[5], and any other sentencing issues. The resentencing hearing will be held on February 2, 2018, at 10:00 a.m.

## VI. Conclusion

The § 2255 motion (ECF No. 149) will be GRANTED IN PART with respect to the claim of ineffective assistance of counsel in relation to the motion to withdraw the guilty plea. A resentencing hearing will be held on February 2, 2018 at 10:00 a.m.

An appropriate order follows.

December 6, 2017                     /s/ Joy Flowers Conti
                                     Joy Flowers Conti
                                     Chief United States District Judge

---

[5] The court is aware of the government's position about acceptance of responsibility, as set forth in its proposed findings and conclusions.